**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No.

ROEL ESPEJO CAMAYO, and
JUVENCIO SAMANIEGO DAMIAN,

      Plaintiffs,

v.

JOHN PEROULIS & SONS SHEEP, INC., a foreign corporation of Colorado,
LOUIS PEROULIS,
STANLEY PEROULIS, and
CRISOLOGO DAMIAN,

      Defendants.

---

# COMPLAINT

---

## PRELIMINARY STATEMENT

1.     Roel Espejo Camayo and Juvencio Samaniego Damian ("Plaintiffs") are sheepherders from the highlands of Peru who were brought to the U.S. to work for Defendant John Peroulis & Sons Sheep, Inc., as agricultural workers.

2.     From their arrival in Colorado, Plaintiffs were forced to work long hours without sufficient food.  Defendants Louis and Stanley Peroulis confiscated their travel and immigration documents and ordered Plaintiffs not to leave the ranch or talk with any passersby.  Plaintiffs were repeatedly yelled at, called names and threatened by their employers, such that they were in constant fear for their well-being.  Defendants Louis and Stanley Peroulis also physically attacked Plaintiff Juvencio Samaniego Damian on several occasions.

3.      Plaintiffs bring this action to recover damages for injuries inflicted by Defendants under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1589 *et seq.,* the Colorado Wage Claim Act (CWCA), Colo. Rev. Stat. § 8-4-101 *et seq.*, and common law claims under Colorado law for assault, battery, outrageous conduct, negligent infliction of emotional distress, false imprisonment, breach of contract, fraud and unjust enrichment.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1595 (TVPRA) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' related claims under Colorado law.

5.      Venue is proper pursuant to 28 U.S.C. § 1391.  A substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in Colorado.  On information and belief, Defendants Stanley and Louis Peroulis reside in Colorado.  Defendant John Peroulis & Sons Sheep, Inc., is registered as a foreign corporation in Colorado.

## PARTIES

### A.      PLAINTIFFS

6.      Plaintiff Roel Espejo Camayo ("Plaintiff Espejo") is a citizen of Peru and was employed by Defendant John Peroulis & Sons Sheep, Inc., as a temporary foreign agricultural worker on an H-2A visa from approximately March 19, 2009, to November 11, 2009.

7.      Plaintiff Juvencio Samaniego Damian ("Plaintiff Samaniego") is a citizen of Peru and was employed by Defendant John Peroulis & Sons Sheep, Inc., as a temporary foreign agricultural worker on an H-2A visa from approximately June 16, 2009, to July 14, 2009.

8.      Before coming to the United States, Plaintiff Espejo lived in a rural town in the highlands of Peru, approximately two hours from Huancayo, Peru.  Plaintiff Samaniego and his family resided in a remote and mountainous area in Peru, approximately eight hours by vehicle from the closest town with a telephone.

9.      Both Plaintiffs do not understand English.

10.     Plaintiff Samaniego has difficulty reading and writing Spanish.

11.     Plaintiff Samaniego has been diagnosed with "borderline intellectual functioning."

12.     Both Plaintiffs have experience as sheepherders in Peru.

## B.    DEFENDANTS

13.     Defendant John Peroulis & Sons Sheep, Inc., ("Defendant John Peroulis & Sons") is registered as a foreign corporation in good standing in Colorado, with a principal street mailing address in Craig, Colorado.

14.     Defendant John Peroulis & Sons was formed under Wyoming law but is presently inactive and administratively dissolved in Wyoming.

15.     Defendant John Peroulis & Sons employed Plaintiffs as defined by Colo. Rev. Stat. § 8-4-101(5) and 20 C.F.R. § 655.100(b) (Jun. 1, 1987) (amended 2010).

16.     Defendant John Peroulis & Sons is a closely held family corporation.

17.     On information and belief, Defendant Stanley Peroulis is an individual residing in Colorado.

18.     Defendant Stanley Peroulis holds himself out as a partner with Defendant John Peroulis & Sons.

19.     On information and belief, Defendant Louis Peroulis is an individual residing in Colorado.

20.     Defendant Louis Peroulis is the registered agent for Defendant John Peroulis & Sons.

21.     Defendants Stanley and Louis Peroulis are responsible for the day-to-day ranching operations of Defendant John Peroulis & Sons, including the supervision of workers.

22.     On information and belief, Defendants Stanley and Louis Peroulis act as the alter egos of Defendant John Peroulis and Sons.

23.     Defendant John Peroulis & Sons, Defendant Stanley Peroulis and Defendant Louis Peroulis will hereinafter be referred to as "Defendants Peroulis."

24.     On information and belief, Defendant Crisologo Damian ("Defendant Damian") is an individual residing in Utah.

25.     At all times relevant to this action, Defendant Damian recruited H-2A workers on behalf of Defendant John Peroulis & Sons.

26.     On information and belief, Defendant Damian had previously worked as a supervisor on Defendant John Peroulis & Sons' ranch.

## STATEMENT OF FACTS

27.     Defendant John Peroulis & Sons employs temporary foreign workers under the H-2A visa program to work as sheepherders on its ranch.

28.     The H-2A program enables employers to hire foreign workers to come to the U.S. to perform temporary agricultural work.  8 U.S.C. § 1188.

29.     Regulations found at 20 C.F.R. § 655.100 *et seq.* (Jun. 1, 1987) (amended 2010)

govern the contents of job offers ("clearance orders") that must be made to both U.S. and

temporary foreign workers.

30.     As a part of the clearance orders, employers are required to:

(a)     Furnish workers with payroll statements on or before each pay day, 20

C.F.R. §§ 655.102(b)(8) (Jun. 1, 1987) (amended 2010);

(b)     Guarantee workers employment for at least three-fourths of the workdays

of their work contracts, 20 C.F.R. § 655.102(b)(6) (Jun. 1, 1987)

(amended 2010);

(c)     Promise to comply with applicable federal, state and local employment-

related laws and regulations, 20 C.F.R. § 655.103(b) (Jun. 1, 1987)

(amended 2010);

(d)     Provide a copy of the work contract to workers, 20 C.F.R. §

655.102(b)(14) (Jun. 1, 1987) (amended 2010);

(e)     Promise not to "intimidate, threaten, restrain, coerce, blacklist, discharge,

or in any manner discriminate against . . . any person who has with just

cause" exercised his rights under the employment contract, 20 C.F.R.

§ 655.103(g) (Jun. 1, 1987) (amended 2010).

31.     As a part of the clearance order, employers who hire workers for sheepherding

are: (a) allowed to negotiate a contract of up to 3 years; (b) required to provide workers with

sufficient food to have 3 adequate meals per day; and (c) required to pay workers, at a minimum,

on a monthly basis.  U.S. DOL Field Memo 24-01 (Aug. 1, 2001).

32.     The clearance order as described in paragraphs 30 & 31 is incorporated by regulation and by operation of law into the contracts under which workers are employed.  29 C.F.R. § 501.10(d).

33.     On information and belief, Defendant John Peroulis & Sons submitted various clearance orders in accordance with the H-2A program requirements to the U.S. Department of Labor so that it could obtain sheepherders in 2009.

34.     On information and belief, with approval from the U.S. DOL, Defendant John Peroulis & Sons petitioned U.S. Citizenship and Immigration Services to obtain H-2A visas for the sheepherders it would employ in 2009.

35.     In 2009, both Plaintiffs went to the U.S. Consulate in Lima, Peru, to get their H-2A visas, for which Defendant John Peroulis & Sons had petitioned.

36.     Plaintiff Espejo had an initial H-2A visa that was valid from March 6, 2009, through October 16, 2009.

37.     Plaintiff Samaniego had an initial H-2A visa that was valid from June 2, 2009, through October 16, 2009.

38.     Plaintiffs had to pay several non-recruitment fees to banks and offices in Peru for their paperwork and also had to pay for several trips to Lima and Huancayo to arrange travel and employment.

39.     On March 18, 2009, Plaintiff Espejo flew from Lima, Peru, to Houston, Texas, to Chicago, Illinois, to Denver, Colorado, to Hayden, Colorado, arriving on March 19, 2009.

40.     On June 15, 2009, Plaintiff Samaniego flew from Lima, Peru, to Panama, to Orlando, Florida, to Denver, Colorado, to Hayden, Colorado, arriving on June 16, 2009.

41.     Both Plaintiffs were picked up at the airport by Defendant Stanley Peroulis and immediately put to work on the days they arrived until nightfall.

42.     Both Plaintiffs were informed by Stanley Peroulis that their employment would last 3 years.

43.     During their time on Defendant Peroulis' ranch, Plaintiffs were on call 24 hours a day, 7 days a week.

44.     Plaintiffs never met each other while on the ranch.

**DEFENDANTS' SYSTEM OF CONTROL ON THE RANCH**

45.     Early in their respective employments at the ranch, Defendant Stanley Peroulis confiscated Plaintiffs' personal identification and authorization documents, including their passports, H-2A visas and I-94s, which evidenced lawful entry into the U.S.

46.     At various points on the ranch, each Plaintiff independently asked Defendant Stanley Peroulis for the return of his documents.

47.     Defendant Stanley Peroulis refused, informing each of them that his documents would not help him work.

48.     At various points, both Plaintiffs wanted to leave the ranch but could not because they did not have their personal documents.

49.     Neither Plaintiff received a copy of his work contract or an employee handbook.

50.     Both Plaintiffs had to work long hours, commencing before sunrise and working past sunset.

51.     Both Plaintiffs were provided with the barest of provisions and oftentimes were hungry because they did not have enough food.

52.      Defendant Louis and/or Stanley Peroulis instructed each Plaintiff that he had 15 minutes or less to eat his meals and return to work.

53.      Plaintiffs were not permitted access to the use of Defendants Peroulis' telephones.

54.      Defendant Stanley Peroulis repeatedly informed Plaintiffs that they were not allowed to leave the ranch.

55.      On several occasions, Defendants Stanley and Louis Peroulis each told both Plaintiffs that they were not allowed to talk to people who passed by the ranch.

56.      Defendants Stanley and Louis Peroulis repeatedly verbally abused Plaintiffs using curse words, such as calling Plaintiff Samaniego a "fucking Peruvian" or calling Plaintiff Espejo "worthless."

57.      On several occasions, Defendants Stanley and/or Louis Peroulis threatened each Plaintiff independently that he would be sent back to Peru.

58.      Such threats were made by Defendants Stanley or Louis Peroulis for seemingly any reason, including if Plaintiffs were simply resting or eating.

59.      Plaintiffs greatly feared being sent back to Peru for a variety of reasons, including because of substantial debt, being blacklisted and the personal humiliation of being returned to Peru prematurely.

60.      Defendants Peroulis have a history of mistreating their H-2A workers.

61.      In 2000, the U.S. Department of Labor (U.S. DOL) filed a case against Defendants Peroulis, *Herman v. John Peroulis & Sons et al.*, Civ. Case No. 00-M-1873 (D. Colo. Sept. 25, 2000), attached hereto as Exhibit A.

62.     Pursuant to U.S. District Court Order dated March 30, 2001, attached hereto as Exhibit B, Defendants Peroulis represented that they would abide by the terms of the "H-2A Compliance Plan," the H-2A provisions and implementing regulations.

63.     In the "H-2A Compliance Plan," Defendants Peroulis agreed, among other things, to: (1) prohibit acts of workplace violence; (2) provide workers adequate breaks for eating meals; (3) require that workers have a two-week supply of food at all times; (4) provide workers access to a telephone to make phone calls; (5) provide workers copies of the work contract and employee handbook; and (6) ensure that workers are in possession of their passports and visas at all times.

64.     As employees of Defendants Peroulis, Plaintiffs were the intended third-party beneficiaries of the agreement made with U.S. DOL in the "H-2A Compliance Plan."

**PLAINTIFF ESPEJO**

65.     In January 2009, while in Peru, Plaintiff Espejo heard about a job opportunity in Colorado through "Sonia," the sister of Ambrosio Damian and Defendant Crisologo Damian.

66.     In or around February 2009, Plaintiff Espejo called Ambrosio Damian on the ranch and was informed that he could have a job on the Peroulis Ranch for 3 years if he paid Ambrosio Damian $2,000, and that everything would be "okay" since they would both be working for the same boss.

67.     At that time, Ambrosio Damian was working for Defendants on an H-2A visa.

68.     On information and belief, Ambrosio Damian has since returned or soon will be returning permanently to Peru.

69.     On information and belief, Defendant John Peroulis & Sons provided Ambrosio Damian with the authority to recruit, screen and hire H-2A workers for the ranch.

70.     Plaintiff Espejo was instructed by Ambrosio Damian to pay $1,000 to Sonia before coming to the U.S., and another $1,000 after arriving in the U.S.

71.     Plaintiff Espejo decided to proceed with the immigration process because he believed that this job was a good opportunity to better his life and the life of his family.

72.     In order to pay the fees and costs incurred, Plaintiff Espejo had to sell many of the animals that sustained his family, use every cent he had, and borrow a lot of money from relatives.

73.     In or around February 2009, Plaintiff Espejo paid Sonia $1,000 to begin the H-2A visa process.

74.     In or around February 2009, Defendant John Peroulis & Sons sent Plaintiff Espejo, through Sonia, papers that were necessary to obtain his visa at the U.S. Consulate.

75.     After arriving in the U.S. and working for a period of time, Plaintiff Espejo paid Ambrosio Damian an additional $1,000 by requesting that Defendant Stanley Peroulis send some of his earnings to Sonia in Peru.

76.     While Plaintiff Espejo was on the ranch, Defendant Stanley Peroulis indicated to him that he knew workers were being charged money in order to come to the U.S.

77.     While on the ranch, Defendants Peroulis did not give Plaintiff Espejo his pay or pay statements every month.

78.     On one occasion, when Defendant Louis Peroulis saw a book on Plaintiff Espejo's bed, he informed Plaintiff that he was not allowed to read and would take away his book if he saw it out again.

79.     Even though Plaintiff's visa expired on October 16, 2009, and he inquired about its renewal several times, Defendants Peroulis never provided him with his I-94 renewal.

80.     When Plaintiff Esepejo made inquiries about his pay, documents or food, Defendants Stanley and/or Louis Peroulis often reacted in an extremely negative and intimidating manner.

81.     On numerous occasions, Defendant Louis Peroulis exhibited physically aggressive and intimidating behavior, such as kicking automobiles, hitting a horse with a plank of wood, and throwing items while screaming at Plaintiff Espejo, repeatedly placing Plaintiff Espejo in fear for his safety and well-being.

82.     Once, when Plaintiff Espejo and some of his coworkers were having a hard time getting sheep into a corral, both Defendant Stanley Peroulis and Defendant Louis Peroulis became angry and started kicking the sheep and the sides of the corral while yelling at Plaintiff Espejo and his coworkers.

83.     In November 2009, Defendant Louis Peroulis once again acted violently and screamed insults at Plaintiff Espejo because he did not think that one of the horses had been cleaned properly.  Shortly after this incident, Plaintiff Espejo went out on the range to tend to the sheep.  Plaintiff Espejo's coworker later informed him that Defendant Stanley Peroulis had come to their camp looking for Plaintiff Espejo and told the coworker that he was angry and that he was going to punish Plaintiff Espejo when he returned.

84.     After having suffered repeated and extensive abuse from Defendants Stanley and Louis Peroulis and then learning of this threat, Plaintiff Espejo decided that he must escape from the ranch.

85.     At approximately 2:00 p.m. on November 10, 2009, Plaintiff Espejo left the ranch on foot with little more than the clothes on his back and with Defendants Peroulis still in possession of his personal documents and pay.  Plaintiff Espejo walked for approximately two hours to a highway, where he was able to find someone to help him.

86.     Plaintiff Espejo eventually arrived in Craig, well after dark on November 11, 2009, and was left outside the bank where he believed his pay was being held.

87.     During the night, police arrived and, upon learning what had happened to Plaintiff Espejo, took him to a local motel where he was provided with a room for the night.

88.     With the help of local law enforcement, Plaintiff Espejo was ultimately able to retrieve his documents from the Peroulis ranch.

89.     Due to the severe emotional abuse Plaintiff Espejo suffered on the ranch, Plaintiff Espejo has suffered from depression, loss of concentration and appetite, as well as anxiety and nightmares.

**PLAINTIFF SAMANIEGO**

90.     While in Peru, Plaintiff Samaniego first heard about a job opportunity in the United States from a woman named Dinah and a man named Martin.

91.     In or around April 2009, Dinah and Martin put Plaintiff Samaniego in touch by telephone with Defendant Crisologo Damian.

92.     On information and belief, Defendant John Peroulis & Sons provided Defendant Damian with the authority to recruit, screen and hire H-2A workers for their ranch.

93.     On or around May 12, 2009, Defendant Damian informed Plaintiff Samaniego, by telephone, that he was a supervisor on the Peroulis ranch.  He advised Plaintiff Samaniego that if he came to work for the Peroulis ranch, he would have a three-year contract, earn $750 per month, live in a trailer and not want for anything.

94.     In that same conversation, Plaintiff Samaniego expressed concern about treatment of workers on the Peroulis ranch because of rumors he had heard.  Defendant Damian reassured Plaintiff Samaniego by stating that he had worked for them and that Plaintiff Samaniego was "not to believe everything that people tell you."  He repeated that Plaintiff Samaniego would not "want" for anything.

95.     Defendant Damian also informed Plaintiff Samaniego that he had to pay $3,000 to Defendant Damian to get the job and $2,000 for his airplane ticket and paperwork.  Defendant Damian informed Plaintiff Samaniego that once he got to the United States he would be refunded the cost of his airplane ticket.

96.     Defendant Damian further instructed Plaintiff Samaniego not to tell anyone about the $3,000 payment to him.

97.     Relying on the representations made by Defendant Damian, Plaintiff Samaniego decided to proceed with the H-2A visa process because he believed that this job was a good opportunity to better his life and the life of his family.

98.     Plaintiff Samaniego had to borrow a lot of money from his family and friends to pay the fees he understood were required to get the job.

99.     In or around late May 2009, Plaintiff Samaniego wired $5,000 to Defendant Damian from Huancayo, Peru.

100.    On or around May 26, 2009, Defendant John Peroulis & Sons sent Plaintiff Samaniego, through Dinah, papers that were necessary to obtain his visa at the U.S. Consulate.

101.    After arriving in the U.S., Plaintiff Samaniego informed Defendant Stanley Peroulis that he had incurred significant expenses in order to come to the Untied States.

102.    On a regular basis, Defendants Stanley and Louis Peroulis verbally abused Plaintiff Samaniego.  Defendants Stanley and Louis Peroulis constantly insulted him, made derogatory comments about him, cursed at him and called him names for simply talking, eating or sleeping.  Once, they called him a "pig" because he had gotten dirty while working.

103.    On several occasions, Defendants Stanley and Louis Peroulis' verbal abuse would be accompanied by physical violence.  Defendants Stanley and Louis Peroulis would grab, slap, kick and/or beat Plaintiff Samaniego.  Plaintiff Samaniego would plead and beg for them to stop.

104.    On or around July 14, 2009, Plaintiff Samaniego was awakened at 3 a.m. by Defendant Stanley Peroulis hitting him on the back.

105.    After waking him up, Defendant Stanley Peroulis told Plaintiff Samaniego to sign a piece of paper in English, but he did not since he could not read it.

106.    Defendant Stanley Peroulis then instructed Plaintiff Samaniego to pack up his things and mentioned something about taking him to another part of the ranch and then sending him back to Peru.  Defendant Stanley Peroulis then left after stating that he would return shortly.

107.    Plaintiff Samaniego was afraid for his personal safety and decided that he had to escape from the ranch.

108.     On or around July 15, 2009, at approximately 6 a.m., Plaintiff Samaniego left on foot, leaving most of his personal belongings behind, and walked for approximately 10 hours until he came across another person and asked him for help.

109.     Plaintiff Samaniego left even though he had not been paid and Defendants Peroulis had his personal documents.

110.     On August 10, 2009, Plaintiff Samaniego, though his counsel, sent a demand for his wages and personal documents to Defendant John Peroulis & Sons.

111.     On August 14, 2009, Plaintiff Samaniego received his personal documents and only a portion of his wages due because Defendant John Peroulis & Sons deducted $152.92 for a "travel advance" and alleged that Plaintiff Samaniego owed additional amounts for his inbound plane ticket.

112.     Due to the severe emotional and physical abuse Plaintiff Samaniego suffered on the ranch, Plaintiff Samaniego has suffered from headaches, loss of concentration, anxiety and nightmares, and has been diagnosed with acute post traumatic stress disorder.

## FIRST CLAIM FOR RELIEF

**(Trafficking Victims Protection Reauthorization Act against Defendants Peroulis)**

113.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

114.     This claim arises against Defendants Peroulis under the TVPRA.

115.     Pursuant to 18 U.S.C. § 1589(a), Defendants Peroulis knowingly recruited, harbored, provided, or obtained by any means, Plaintiffs, for labor or services by means of:

(1)     force, threats of force;

(2)     serious harm or threats of serious harm;

(3)     threatened abuse of law or legal process; or

(4)     a scheme, plan, or pattern intended to cause Plaintiffs to believe that, if they did not perform such labor or services, that they would suffer serious harm.

116.    Pursuant to 18 U.S.C. § 1589(b), Defendants Peroulis, knowingly or in reckless disregard of the facts, participated in a venture that obtained labor or services by means described in paragraph 115, and thereby knowingly benefited financially.

117.    Pursuant to 18 U.S.C. § 1590, Defendants Peroulis knowingly recruited, harbored, provided, or obtained by any means, Plaintiffs, for labor or services, in violation of 18 U.S.C. § 1592, by means of removing, confiscating, or possessing Plaintiffs' passports and/or immigration documents:

(a)     in the course of a violation of 18 U.S.C. § 1589;

(b)     with intent to violate 18 U.S.C. § 1589; or

(c)     to prevent or restrict or to attempt to prevent or restrict, without lawful authority, Plaintiffs' liberty to move or travel, in order to maintain the labor or services of Plaintiffs, when Plaintiffs were victims of a severe form of trafficking in persons.

118.    As a result, Plaintiffs suffered injuries and are entitled to recover damages pursuant to 18 U.S.C. § 1595.

## SECOND CLAIM FOR RELIEF

### (False Imprisonment Claim against Defendants Peroulis)

119.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

120.   Defendants Peroulis intentionally restricted Plaintiffs' freedom of movement.

121.   Plaintiffs' freedom of movement was restricted for a period of time, directly or indirectly, by Defendants Peroulis through force and fear.

122.   Plaintiffs were conscious that their freedom of movement was restricted.

123.   Defendants Peroulis' actions were willful and wanton in that they committed such actions purposefully, heedlessly and recklessly, without regard to the consequences or to the rights and safety of Plaintiffs.

124.   As a result, Plaintiffs have suffered damages.

## THIRD CLAIM FOR RELIEF

### (Outrageous Conduct Claim against Defendants Peroulis)

125.   Plaintiffs reallege and incorporate by reference the allegations set forth above.

126.   Defendants Peroulis engaged in a course of conduct that constituted extreme and outrageous conduct against Plaintiffs.

127.   Defendants Peroulis acted recklessly or with the intent of causing Plaintiffs severe emotional distress.

128.   Defendants Peroulis' actions were willful and wanton in that they committed such actions purposefully, heedlessly and recklessly, without regard to the consequences or to the rights and safety of Plaintiffs.

129.   Defendants Peroulis' conduct caused Plaintiffs to suffer severe emotional distress.

130.   As a result, Plaintiffs have suffered emotional injuries and damages.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract – Third-Party Beneficiary Claim against Defendants Peroulis)

131.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

132.    On March 30, 2001, Defendants Peroulis agreed to abide by the terms of the "H-2A Compliance Plan," attached hereto as Exhibit B, as well as the H-2A provisions and implementing regulations.

133.    Plaintiffs are third-party beneficiaries to that agreement.

134.    Defendants breached multiple provisions of the agreement by failing to comply with the terms of the "H-2A Compliance Plan," as well as the H-2A regulations.

135.    As a result, Plaintiffs suffered injuries.

## FIFTH CLAIM FOR RELIEF

### (Breach of Contract Claim against Defendant John Peroulis & Sons)

136.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

137.    Defendant John Peroulis & Sons and Plaintiffs entered into employment contracts by virtue of Plaintiffs' employment under Defendant John Peroulis & Sons' H-2A clearance order.

138.    Plaintiffs performed their obligations under these contracts until Defendant John Peroulis & Sons' conduct rendered their performance impossible.

139.    Defendant John Peroulis & Sons breached these employment contracts by failing to comply with the contracts' terms and conditions.

140.    As a result, Plaintiffs suffered damages.

## SIXTH CLAIM FOR RELIEF

### (Promissory Estoppel Claim against Defendant John Peroulis & Sons)

141.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

142.    Defendant John Peroulis & Sons and its agents made promises to Plaintiffs regarding the length of their contracts.

143.    Defendant John Peroulis & Sons should have reasonably expected that such promises would induce action and/or forbearance by Plaintiffs.

144.    Plaintiffs were in fact induced to act and/or refrained from acting based on such promises made by Defendant John Peroulis & Sons.

145.    Defendant John Peroulis & Sons broke its promises to Plaintiffs.

146.    Agents of Defendant John Peroulis & Sons had apparent authority to make such promises to Plaintiffs.

147.    As a result, Plaintiffs suffered damages.

148.    Injustice can only be avoided by the enforcement of Defendant John Peroulis & Sons' promises.

## <u>SEVENTH CLAIM FOR RELIEF</u>

**(Plaintiff Samaniego's Colorado Wage Claim Act against Defendant John Peroulis & Sons)**

149.    Plaintiff Samaniego realleges and incorporates by reference the allegations set forth above.

150.    This claim arises under Colo. Rev. Stat. § 8-4-101 *et seq.*, against Defendant John Peroulis & Sons.

151.    Defendant John Peroulis & Sons refused to pay all wages or compensation owed to Plaintiff Samaniego in accordance with Colo. Rev. Stat. § 8-4-109.

152.    Plaintiff Samaniego made a written demand for wages within 60 days after his separation from Defendant John Peroulis & Sons, as required by Colo. Rev. Stat. § 8-4-109(3), stating in the demand where payment was to be received.

153.    Defendant John Peroulis & Sons failed to tender and/or willfully failed to tender the full amount of wages owed within 14 days of receipt of the demand as required by Colo. Rev. Stat. § 8-4-109(3).

154.    As a consequence, Plaintiff Samaniego is entitled to receive wages owed and additional penalties, pursuant to Colo. Rev. Stat. § 8-4-109(3).

## EIGHTH CLAIM FOR RELIEF

### (Plaintiff Samaniego's Assault Claim against Defendants Peroulis)

155.    Plaintiff Samaniego realleges and incorporates by reference the allegations set forth above.

156.    Defendants Peroulis intended to cause offensive or harmful physical contact with Plaintiff Samaniego and/or intended to place Plaintiff Samaniego in apprehension of such contact.

157.    Defendants Peroulis placed Plaintiff Samaniego in apprehension of immediate physical contact.

158.    The contact was and/or appeared to be harmful or offensive.

159.    Defendants Peroulis' actions were willful and wanton in that they committed such actions purposefully, heedlessly and recklessly, without regard to the consequences or to the rights and safety of Plaintiffs.

160.    As a result, Plaintiff Samaniego suffered damages.

## NINTH CLAIM FOR RELIEF

**(Plaintiff Samaniego's Battery Claim against Defendants Peroulis)**

161.    Plaintiff Samaniego realleges and incorporates by reference the allegations set forth above.

162.    Defendants Peroulis' actions resulted in physical contact with Plaintiff Samaniego.

163.    Defendants Peroulis intended to make harmful or offensive physical contact with Plaintiff Samaniego.

164.    The contact was harmful or offensive.

165.    Defendants Peroulis' actions were willful and wanton in that they committed such actions purposefully, heedlessly and recklessly, without regard to the consequences or to the rights and safety of Plaintiffs.

166.    As a result, Plaintiff Samaniego suffered damages.

## TENTH CLAIM FOR RELIEF

**(Plainitff Samaneigo's Negligent Infliction of Emotional Distress**

**Claim against Defendants Peroulis)**

167.    Plaintiff Samaniego realleges and incorporates by reference the allegations set forth above.

168.    Defendants Peroulis acted negligently.

169.    Defendants Peroulis' negligence caused Plaintiff Samaniego to be put in fear for his own safety and such fear resulted in physical consequences and/or long, continued emotional damage to Plaintiff Samaniego.

170.     Defendants Peroulis' actions were willful and wanton in that they committed such actions purposefully, heedlessly and recklessly, without regard to the consequences or to the rights and safety of Plaintiff Samaniego.

171.     Defendants Peroulis committed said acts while acting within the scope of their employment for Defendant John Peroulis & Sons.

172.     As a result, Plaintiff Samaniego has suffered physical and emotional damages.

## ELEVENTH CLAIM FOR RELIEF

### (Plaintiff Samaniego's Fraud Claim against Defendant Damian)

173.     Plaintiff Samaniego realleges and incorporates by reference the allegations set forth above.

174.     Defendant Damian made false representations of facts and/or failed to disclose facts about the fees charged and the nature of the job at the time of recruitment.

175.     These represented and/or omitted facts were material.

176.     Defendant Damian made the representations and/or omissions knowing them to be false and with the intent that Plaintiff Samaniego rely on such representations and/or omissions.

177.     Plaintiff Samaniego relied on such representations and omissions.

178.     Plaintiff Samaniego's reliance was justified.

179.     Defendant Damian's actions were willful and wanton in that he committed such actions purposefully or that he acted heedlessly and recklessly, without regard to the consequences or to the rights of Plaintiff Samaniego.

180.     As a result, Plaintiff Samaniego has suffered damages.

## TWELFTH CLAIM FOR RELIEF

### (Plaintiff Samaniego's Unjust Enrichment Claim against Defendant Damian)

181.    Plaintiff Samaniego realleges and incorporates by reference the allegations set forth above.

182.    In addition to paying other fees and costs, Plaintiff Samaniego paid $5,000 to Defendant Damian for his plane ticket, paperwork and a "good job," in order to come to the United States.

183.    Under the circumstances, it would be unjust for Defendant Damian to retain the benefit of the funds without making restitution to Plaintiff.

184.    As a result of Defendant Damian's wrongful actions, Plaintiff Samaniego has suffered damages.

## DEMAND FOR JURY TRIAL

185.    Plaintiffs demand a trial to a jury for all issues so triable.

## PRAYER FOR RELIEF

186.    Plaintiffs respectfully request that this Court enter an order:

  a)    accepting jurisdiction of this case;

  b)    declaring that Defendants Peroulis violated the TVPRA and awarding Plaintiffs damages and reasonable attorneys' fees;

  c)    granting a declaratory judgment against Defendants Peroulis on Plaintiffs' claims of extreme and outrageous conduct, negligent infliction of emotional distress and false imprisonment, and awarding Plaintiffs damages;

d)      declaring that Defendant John Peroulis & Sons breached its contracts with

        Plaintiffs and awarding Plaintiffs damages as a result of these breaches;

e)      declaring that Defendant John Peroulis & Sons violated the Colorado

        Wage Claim Act and awarding Plaintiff Samaniego penalties and

        reasonable attorneys' fees under the Colorado Wage Claim Act;

f)      granting a declaratory judgment against Defendants Peroulis on Plaintiff

        Samaniego's claims of assault and battery, and awarding Plaintiff

        Samaniego damages;

g)      granting a declaratory judgment against Defendant Damian on Plaintiff

        Samaniego's claims of fraud and unjust enrichment and awarding Plaintiff

        Samaniego damages;

h)      awarding Plaintiffs reasonable atttorney's fees, costs and experts' fees;

i)      awarding Plaintiffs' pre-judgment and post-judgment interest; and

j)      granting such other relief as this Court deems just and proper.

This 6th day of April, 2010.

                        Respectfully Submitted,


                          s/Jennifer J. Lee_____
                        Jennifer J. Lee
                        **Colorado Legal Services**
                        **Migrant Farm Worker Division**
                        1905 Sherman Street, Suite 400
                        Denver, CO 80203
                        Tel. (303) 866-9366
                        Fax (303) 830-7860
                        jlee@colegalserv.org

  s/Jenifer C. Rodriguez
Jenifer C. Rodriguez
**Colorado Legal Services**
**Migrant Farm Worker Division**
1905 Sherman Street, Suite 400
Denver, CO 80203
Tel. (303) 866-9366
Fax (303) 830-7860
jcrodriguez@colegalserv.org

  s/Linda Surbaugh
Linda Surbaugh
**Colorado Legal Services**
**Migrant Farm Worker Division**
1905 Sherman Street, Suite 400
Denver, CO 80203
Tel. (303) 866-9366
Fax (303) 830-7860
colinda2@aol.com

**Attorneys for Plaintiffs**