IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00772-MSK-MJW

ROEL ESPEJO CAMAYO,
JUVENCIO SAMANIEGO DAMIAN,
JHOSEMAR SAMANIEGO FERNANDEZ, and
SILVIO INGA BRUNO,

        Plaintiffs,

vs.

JOHN PEROULIS & SONS SHEEP, INC., a foreign corporation of Colorado,
LOUIS PEROULIS,
STANLEY PEROULIS, and
CRISOLOGO DAMIAN,

        Defendants.

---

## PEROULIS DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c)

---

Defendants, **JOHN PEROULIS & SONS SHEEP, INC**., **LOUIS PEROULIS**, and

**STANLEY PEROULIS**, (collectively, the "Peroulis Defendants"), through their attorneys

**OVERTURF MCGATH HULL & DOHERTY, P.C.**, respectfully submit their Response to

Plaintiffs' Motion for Protective Order Pursuant to Fed.R.Civ.P. 26(c) [Doc. #84-85], as

follows:

I.      SUMMARY OF ARGUMENT

      Plaintiffs seek to preclude the Peroulis Defendants from inquiring into the Plaintiffs'

immigration status, including Plaintiffs' efforts to obtain T or U visas, based on Plaintiffs'

arguments that such inquiries have "questionable relevance" and may have an "*in terrorem* effect." Plaintiffs' Memorandum of Law in Support of Their Motion for a Protective Order Pursuant to Fed.R.Civ.P. 26(c) ("Brief") at p. 1-2 [Doc. #85]. The Peroulis Defendants, however, are entitled to this information because the information is directly relevant to Plaintiffs' claims for relief, Plaintiffs' damages claims for unearned wages and benefits, Plaintiffs' damages claims for alleged emotional and mental distress, and several of the Peroulis Defendants' defenses such mitigation of damages and unclean hands. In addition, any *in terrorem* effect is outweighed by the Peroulis Defendants' need to obtain this highly relevant information.

Plaintiffs have failed to meet their burden to establish the information is irrelevant by demonstrating the information does not come within the scope of relevance as defined by Fed.R.Civ.P. 26(b)(1), or is of such marginal relevance that the harm in producing the information outweighs the presumption in favor of broad disclosure. As a result, this Court should deny Plaintiffs' Motion for Protective Order.

## II.   LAW APPLICABLE TO MOTIONS FOR PROTECTIVE ORDER

As this Court is well-versed, Rule 26(b)(1) defines the scope of discovery as follows:

> …Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, descriptions, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter…Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence…

2

Fed.R.Civ.P. 26(b)(1). However, "a party's right to obtain discovery of 'any matter, not privileged, that is relevant to the claim or defense of a party' ... may be constrained where the court determines that the desired discovery is unreasonable or unduly burdensome given the needs of the case, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Simpson v. University of Colo.*, 220 F.R.D. 354, 356 (D.Colo.2004). "The Federal Rules of Civil Procedure permit a court to restrict or preclude discovery when justice requires in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." *Id.*; Fed.R.Civ.P. 26(c)(1).

A request for discovery is considered relevant if it is possible that the information sought may be relevant to the claim or defense of any party. *Bonanno v. Quizno's Franchise Co.*, 255 F.R.D. 550, 552 (D.Colo.2009).  When the requested information appears to be relevant, the party objecting to the discovery has the burden to establish the information is irrelevant by demonstrating the information does not come within the scope of relevance as defined by Fed.R.Civ.P. 26(b)(1), or is of such marginal relevance that the harm in producing the information outweighs the presumption in favor of broad disclosure. *Id.* (*citing Simpson*, 220 F.R.D. at 359).

Although the Peroulis Defendants support their claim of entitlement to the immigration information as detailed below with numerous other references, Plaintiffs

incorrectly attempt to distinguish this case from the decision in *Catalan v. Vermillion Ranch Ltd. Partnership*, No. 06-cv-01043-WYD-MJW, 2007 WL 951781, (Mar. 28, 2007). Brief at p.4. Frankly, the only distinction is that *Catalan* involved cattle, while this case involves sheep, and the Plaintiffs in *Catalan* also brought a claim pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"). Just as the Peroulis Defendants argue below, the *Catalan* defendants argued that discovery of plaintiffs' immigration status and subsequent employment was discoverable and probative of plaintiffs' true reasons for absconding, and was relevant to plaintiffs' emotional distress claims, mitigation of damages, credibility, defendants' defenses and damages. *Catalan*, 2007 WL 951781 at *1-2 (holding "that the requested discovery is probative on the issues pending before this court…"). Although the Peroulis Defendants' discovery request into Plaintiffs' immigration status also seeks as part of that general request more specific information regarding Plaintiffs' attempts to obtain T or U visas, this does not distinguish this case from *Catalan*, which directly applies here.

## III.   ARGUMENT

### A.   Immigration Information is Relevant to the Claims and Defenses

Plaintiffs are pursuing claims against the Peroulis Defendants for human trafficking and forced labor under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 *et seq.*, violations of the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101 *et seq.*, failure to pay minimum wage in violation of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.*, assault, battery, outrageous conduct, negligent infliction of emotional distress, false imprisonment, and breach of contract.

Plaintiffs allege that they each had an expectation that they would work for the Peroulis Defendants "for a period of three years…," and that they were "forced to leave the ranch to avoid continued mistreatment…" Brief at p. 2.  Plaintiffs state in their Brief that they seek "pay they would have earned if they had been able to complete their H-2A contracts and for physical pain and/or mental anguish, as well as punitive damages[1]." Brief at p. 3.  Specifically, Plaintiffs seek damages as a result of their TVPRA claims for:

> (1) the wages they would have earned for the remainder of the three years of employment because of the necessary departure from their jobs; (2) the benefit of free housing and food for the remainder of the three years; and (3) the costs expended in order to obtain these jobs in the first instance[2].

Plaintiffs' Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(C), attached as **Exhibit A**. Despite Plaintiffs arguments to the contrary, Plaintiffs are clearly seeking wages and benefits they "*would have earned*" for work they did not complete while in the employ of Defendants.

The information the Peroulis Defendants seek is directly relevant to Plaintiffs' claims for relief, particularly their TVPRA claims, Plaintiffs' damages claims for unearned wages and benefits, Plaintiffs' damages claims for alleged emotional and mental distress, and

---

[1] Plaintiffs have yet to move to amend their Complaints to assert a claim for punitive damages, which motion the Peroulis Defendants will oppose.

[2] Plaintiff Inga Bruno seeks both the costs associated with obtaining his job, but also associated with the departure from the job.

some of the Peroulis Defendants' defenses such as unclean hands. Discovery of this information, especially as related to T and U visas, is a critical component of the Peroulis Defendants' theory of the case, and Defendants will be unjustly harmed by a prohibition of this discovery.

        1.   <u>Plaintiffs' Cases Distinguished</u>

Plaintiffs rely on cases that are uniformly distinguishable from this case. Plaintiffs rely entirely on decisions, mostly involving FLSA and discrimination claims, where the party's immigration status was deemed completely irrelevant or merely a collateral issue to the claims and defenses. *See e.g. In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) (information sought was "completely irrelevant to the case"); *Flores v. Albertsons, Inc.*, 2002 WL 1163623, *5 (C.D. Cal. April 9, 2002) (information not relevant to any claim or defense); *Lin v. Chinatown Restaurant Corp.*, 771 F.Supp.2d 185, 190 (same); *Rengifo v. Erevos Enterprises, Inc.*, 2007 WL 894376, *2 (S.D.N.Y. March 20, 2007) (same; discovery prohibited "when irrelevant to any material claim"). This is simply not the case here.

Even in many of those decisions cited by Plaintiffs, however, the courts acknowledged that immigration status was discoverable when it went to a material aspect of the case. *See e.g. Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) ("Were plaintiff's immigration status relevant to prove a material aspect of the defense, a protective order would not be appropriate"); *Mischalski v. Ford Motor Co.*, 935 F.Supp. 203, 207 (E.D.N.Y. 1996) (acknowledging that immigration status "is admissible where it is relevant to the

issue of lost wages and future earnings," but the plaintiff was not seeking those damages); *David v. Signal Int'l, L.L.C.*, 2010 WL 4667972, *6 (E.D. La. Nov. 5, 2010) (citing with approval language quoted above from *Topo v. Dhir*); *Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (permitting defendant to renew request for discovery of immigration status "[i]f it appears at some later juncture that such discovery would be relevant, and more relevant than harmful…").

Plaintiffs also rely on numerous cases where the court finds there is a legitimate concern that disclosure of the plaintiff's immigration status could result in the plaintiff losing his job with the employer-defendant and being subject to deportation proceedings. *See e.g. Avila-Blum v. Casa de Cambio Delgado, Inc.*, 236 F.R.D. 190, 191 (S.D.N.Y. 2006) ("publicly disclosing their unlawful presence in this country would subject them to deportation proceedings"); *E.E.O.C. v. First Wireless Gr., Inc.*, 225 F.R.D. 404, 407 (E.D.N.Y. 2004) (illegal status "would subject them to criminal charges and, possibly, deportation); *Albertsons, supra.* at *6 (Defendant sought information "so that it can preclude undocumented members of the class from performing janitorial services in its stores"); *Lozano v. City of Hazleton*, 239 F.R.D. 397, 399 (M.D. Pa. 2006) ("defendant has no need for the information…[and] plaintiffs may legitimately fear removal from the country and separation from their families…"). There is no similar concern here where Plaintiffs already absconded from their jobs and the Peroulis Defendants already met their H-2A obligation to report Plaintiffs to authorities. Plaintiffs have not demonstrated that there is an ongoing

threat that the information disclosed may jeopardize a job or immigration proceeding, especially since such information may be protected by a limited-use order discussed further below.

The cases Plaintiffs rely upon also frequently involve instances where the sole purpose for obtaining information related to immigration status was to attack the credibility of the party. *See e.g. Avila-Blum*, 236 F.R.D. at 192 ("Defendants have pointed to nothing other than the issue of credibility during the liability phase to which this inquiry is relevant"); *Hernandez v. City Wide Insulation of Madison, Inc.*, 2006 WL 3474182, *1 (E.D. Wis. Nov. 30, 2006) (irrelevant to claims and solely sought for credibility); *Sandoval v. American Building Maintenance Indus., Inc.*, 267 F.R.D. 257, 276-77 (D. Minn. 2007) (same). Here, however, the issue of credibility is not the focus of the Peroulis Defendants' inquiry, but rather as it goes to the issue of motivation and fabrication of testimony, are just two of multiple relevant reasons that the Peroulis Defendants seek the immigration status information of the Plaintiffs.

2.     <u>Immigration Information Relevant to show Alternative Motives for Leaving the Ranch</u>

Plaintiffs' theory for their TVPRA claims is that Plaintiffs' "were forced to leave the ranch to avoid continued mistreatment…" Brief at p. 2. Plaintiffs acknowledge that the Peroulis Defendants, in compliance with applicable H-2A regulations, "promptly reported their departure" to the relevant federal immigration agencies. Brief at p. 2. Plaintiffs also

correctly note that there is no technical requirement to file a civil lawsuit in order to obtain a T or U visa.

What Plaintiffs fail to discuss, however, is that the opportunity to obtain a T or U visa is unquestionably an incentive to claim that one is the victim of human trafficking or forced labor and abscond from your H-2A employment. *See* Affidavit of Ann Allott, attached hereto as **Exhibit B**. Recipients of T or U visas are also given authorization to work in the United States, may be able to obtain visas and work authorizations for their immediate family members, and are eligible for permanent resident status after a period of time. 8 C.F.R. § 214.11(l)(4) (work authorization); 8 C.F.R. § 214.14(c)(7) (work authorization); 8 C.F.R. § 214.11(o) (family); 8 C.F.R. § 214.14(f) (family); 8 U.S.C. § 1255(l) and (m) (permanent resident); *Ex. B*. This incentive is particularly strong where, as is the case here, the employee is made aware of this opportunity prior to leaving your employment. *Ex. B*.

The Migrant Farm Workers Division of Colorado Legal Services ("CLS"), Plaintiffs' counsel in this case, provides information both on its website and directly to H-2A employees regarding the opportunity to obtain a T or U visa. Some of this information includes a brochure discussing how to determine if the employee is a victim of human trafficking. *See* various brochures from CLS' website attached as **Exhibit C**, and translated

versions of these documents attached as **Exhibit D**[3]. CLS goes so far as to state in its "human trafficking" brochure that "[u]nder the law, you could receive permission to stay in the United States if you are the victim of human trafficking. And there are other benefits available to help you in your situation."

At least two of the Plaintiffs in this case, Silvio Inga Bruno and Jhosemar Samaniego Fernandez, testified at their depositions that they received CLS brochures regarding their "rights." Deposition of Silvio Inga Bruno at 103:22-105:24, 106:14-16, attached as **Exhibit E**; Deposition of Jhosemar Samaniego Fernandez at 109:13-115:22, attached as **Exhibit F**. Plaintiff Roel Espejo Camayo denied that he had contact with representatives of CLS while working for the Peroulis Defendants, but photographs produced by Plaintiff Espejo Camayo appear to match photographs used by CLS in its article "Overworked and Underpaid: H-2A Herders in Colorado," which indicate that he in fact had contact with CLS prior to absconding. *Compare* Plaintiff Espejo Camayo's photographs disclosed in his Initial Disclosures attached as **Exhibit G**, *with* CLS' article "Overworked and Underpaid: H-2A Herders in Colorado" at p. 9, attached as **Exhibit H**; *see also* Deposition of Roel Espejo Camayo at 89:18-90:2, attached as **Exhibit I**.

In addition to its relevance to show alternative reasons for absconding from the ranch, the Plaintiffs' statements provided to third parties is relevant to the claims presented

---

3 The English translations are provided as a convenience to the Court, but are not "certified" translations. Ana Acosta Miller, Court Certified Spanish Interpreter (#CCI 7-011), translated these documents.

here.  Information regarding Plaintiffs' attempts to obtain T or U visas will contain

Plaintiffs' own statements and admissions regarding their alleged victimization by the

Peroulis Defendants.[4] *Ex. B.* Applicants for T or U visas must provide evidence that he "is a

victim of a severe form of trafficking in persons," for a T visa, or that he "has suffered

substantial physical or mental abuse as a result of having been a victim of qualifying

criminal activity," for a U visa. 8 C.F.R. § 214.11(d)(2)(iv); 8 C.F.R. § 214.14(b)(1); *Ex.B.* This

evidence must be credible and reliable, and must include a statement of the applicant

describing the facts of his victimization. 8 C.F.R. § 214.11(f); 8 C.F.R. § 214.14(b)(2) and

(c)(2)(iii); *Ex.B.*  Furthermore, information as to who completed the applications, use of

identical language, and potential contradictions in statements are also probative.

Plaintiffs claim, amongst other reasons discussed below, that the information related

to any attempts to obtain T or U visas is privileged or confidential as a result of 8 U.S.C. §

1367. Brief at p. 15-16. Plaintiffs' contrived construction of the statute notwithstanding, the

only two courts who have addressed the issue in a discovery context both determined that

production of application materials in the possession of the applicant were not privileged

or otherwise precluded by the statute. *Demaj v. Sakaj*, 2012 WL 476168, *6 (D. Conn. Feb. 14,

2012) (recognizing the statute's purpose is to protect the confidentiality of the applicant,

but holding that disclosure of documents in applicant's possession "is not prohibited by

---

[4] Even though the issue before this Court is limited to whether the information is merely discoverable, the statements of Plaintiffs in their applications would be admissible at trial pursuant to Fed. R. Evid. 801(d)(2) (statement by a party offered against that party), and potentially, Fed. R. Evid. 613 (prior inconsistent statement).

this statute"); *David v. Signal Int'l, L.L.C.*, 2010 WL 4667972, *7 (E.D. La., Nov. 5, 2010) (rejecting argument that affidavits attached to T and U visa applications were privileged and upholding prior order compelling production of affidavits).

Plaintiffs also fail to note that the prohibition on the Department of Justice, the Department of Homeland Security or Department of State from disclosing information related to T and U visas "ends when the application for relief is denied and all opportunities for appeal of the denial have been exhausted." 18 U.S.C. § 1367(a)(2).

As noted above, only two courts have specifically addressed the disclosure of T or U visa application materials, and because the facts of those cases are significantly distinguishable from this case, neither provides much guidance. In *David*[5], the court specifically held that "plaintiff's immigration status is a collateral issue and does not go to the merits of Signal's defense," but nonetheless permitted the discovery of the redacted affidavits attached to the T and U visa applications. *David* at *7. Here, Plaintiffs' immigration status is directly relevant to both Plaintiffs' claims and the Peroulis Defendants' defenses.

In *Damaj*, a case involving one parent's claim that the other parent abducted their minor children in violation of international and Italian law, the court ordered the respondent to produce copies of her and the children's current visas, which were U-visas. *Damaj* at *5. The *Damaj* court recognized that the information respondent provided in her

application for a U-visa was relevant to her credibility, but the petitioner also sought to establish at trial that respondent secured the immigration status through fraud, which would interfere with respondent's immigration case. *Id*. at *5-6. Because of this potential interference with respondent's immigration case, the court denied the motion to compel those documents related to the application. *Id*. (disclosure "in this case [would allow] the Petitioner to interfere with or undermine Petitioner's immigration case"). Here, the Peroulis Defendants have no intention of interfering with any immigration case, and this Court can easily address this issue with a protective order limiting use of the information to the proceedings in this case.

3.  Immigration Information Relevant to Plaintiffs' Allegations of Emotional and Mental Distress

Each of the Plaintiffs complains of nonspecific stress and "physical pain and/or mental anguish" as a damage, including headaches and stomach problems. Brief at p.3. These complaints appear to have arisen after Plaintiffs left the ranch, not during. *Ex. F* at 140:25-143:12; *Ex. I* at 128:1-133:3; *Ex. E* at 55:10-56:25.

The fact that the Plaintiffs may be in the United States illegally would certainly be another stressor which the jury and healthcare experts should be able to consider. *See Fragoso v. Builders FirstSource Southeast Group, LLC*, 2011 WL 767442 *2 (D. S.C., Feb. 25, 2011); *Aguilar v. Immigration and Customs Enforcement Div. of the U.S. Dept. of Homeland*

---

5 Plaintiffs rely on earlier decisions from this case in their brief, and refer to it as *Signal* or *Signal II*.

*Security*, 2009 WL 1789336 *4 (S.D.N.Y., June 23, 2009); *see also* Deposition of Juvencio Samaniego Damian at 192:1-197:12, attached as **Exhibit J**.

In addition to the questionable timing of Plaintiffs' stress-related complaints, Plaintiffs fully acknowledge that the Peroulis Defendants were required to report that the Plaintiffs had absconded to immigration officials. Plaintiffs knew or should have known while they were still employees at the ranch that absconding from their H-2A employment would violate the terms of their visas and subject them to possible deportation. *Ex. B*.

At least two federal courts have held that the plaintiff's immigration status was relevant to show alternative or multiple sources of emotional and mental distress. *Fragoso, supra.; Aguilar, supra.  Fragoso* was a personal injury case where the defendant sought discovery of the plaintiff's immigration status and social security numbers. *Fragoso* at *1. The court held that in addition to being relevant to plaintiff's claim for past and future lost wages, the plaintiff's claim for emotional distress entitled the defendant "to discover evidence of alternate or multiple sources of possible emotional distress to Plaintiff, including fear of deportation, the unavailability of legal employment, and the fear of arrest by law enforcement." *Id*. at *2.

The plaintiffs in *Aguilar* brought a *Bivens* action against Immigration and Customs Enforcement Division ("ICE") employees, alleging that they had conducted warrantless residential searches as part of ongoing ICE operation, in violation of Fourth Amendment. *Aguilar* at *3. In addition to credibility and bias, the court held that the plaintiffs' and

14

putative class members' immigration status "may be relevant to their allegations of emotional and mental distress." *Id*. at *4. The court distinguished cases that precluded inquiry in connection with the plaintiff's emotional distress damage claims because in that case "the immigration status bore no relation to the harm alleged." *Id*. In contrast, the court stated that at least some of the plaintiffs' emotional distress arose from a fear that they might be detained by ICE which existed in advance of an actual raid. *Id*.

As in *Fragoso* and *Aguilar*, Plaintiffs' immigration status is relevant to their claims of emotional and mental distress to show alternative or multiple sources for the distress they now seek to recover from the Peroulis Defendants.

4.   Immigration Information Relevant to Plaintiffs' Claims for Damages Related to Wages

Plaintiffs fail to distinguish the unearned wages they seek from the wages that numerous courts, including the Supreme Court, have held are not recoverable depending upon the claimant's immigration status. Plaintiffs' entire argument is premised on the fallacy that their H-2A contracts were for three years. Instead, each of the Plaintiffs' H-2A contracts were only valid for one year, and renewable at the Peroulis Defendants' discretion for up to three years.   While it was advantageous to retain a good employee for three years, the Peroulis Defendants were not obligated to keep a poor employee or retain any H-2A worker beyond the original contract period.   Furthermore, any H-2A worker has

the right to terminate his employment and return to his native country, with the financial costs borne by the employer.

By law, approval of an H-2A petition is limited to employment "of a temporary nature where the employer's need to fill the position with a temporary worker will, except in extraordinary circumstances, last no longer than one year." 8 C.F.R. § 214.2(h)(5)(iv)(A). In other words, the term of an H-2A petition is almost always for period of one year or less. Except in the case of emergent circumstances or limited renewals of the H-2A visa not to exceed 3 years, "an alien's stay as an H–2A nonimmigrant is limited by the term of an approved petition…" 8 C.F.R. § 214.2(h)(5)(viii)(C).

In addition to the applicable law limiting the term of employment to one year with discretionary renewals of up to three years, three of the Plaintiffs testified they either knew the length of their H-2A visas were limited to one year or less, or that they received written documentation that explicitly states employment is for a term of only one year, renewable annually for up to three years. *Ex. E* at 69:17-70:1; *Ex. F* at 20:25-21:25; *Ex. I* at 26:9-28:1.

Plaintiffs do not dispute that immediately upon absconding from the ranch, which is defined in the regulations, their H-2A visas were no longer valid giving them illegal status at least until they take steps adjust their legal status (through a T or U visa, for example). 8 C.F.R. § 214.2(h)(5)(vi)(E) ("An H–2A worker has absconded if he or she has not reported for work for a period of 5 consecutive workdays without the consent of the employer"). Plaintiffs declaration that adjusting their legal status upon absconding would require

16

something "miraculous[]" further demonstrates the flaw in their argument given the availability under certain circumstances to obtain continued permission to remain legally in the United States whether through T or U visas or a transfer of their H-2A visa to another employer. Brief at p. 10.  Notably, an absconded H-2A employee who returns to his home country, such that he no longer has illegal status, can still pursue his claims against an employer in our courts and may be eligible for a limited visa to reenter the United States to pursue his claims.

Plaintiffs rely almost exclusively on FLSA cases, but only one of the Plaintiffs here even has an FLSA claim. However, all four Plaintiffs seek lost wages for work that they did not perform as part of their general compensatory damages for their tort-based or, alternatively, their contract-based claims. Brief at p. 3.  Federal courts regularly hold that a plaintiff's immigration status is relevant because it may preclude the plaintiff from recovering wages that the plaintiff did not earn. *See e.g. Fragoso, supra* at *2; *Hernandez-Cortez v. Hernandez*, 2003 WL 22519678, *6-7 (D. Kan. Nov. 4, 2003) (court also distinguished and disregarded cases based on FLSA because plaintiff was seeking lost wages for work not performed); *Maldonado v. Union Pac. R.R.*, 2012 WL 1232093, *2 (D. Kan. April 12, 2012) (following *Hernandez-Cortez* in holding that plaintiff's immigration status may be relevant to liability and a limiting instruction may be given if determined to be solely relevant to damages).

Specifically in the H-2A context, at least one other court in addition to the *Catalan* court has noted that the plaintiffs' immigration status upon leaving the defendant's employment is relevant and discoverable. *Luna v. Del Monte Fresh Produce (Southeast), Inc.,* 2007 WL 1500269, *5-6 (N.D. Ga. May 18, 2007). The issue addressed by the *Luna* court dealt with a motion to disqualify the class representative for failure to respond to several questions regarding his work history and H-2A visa status upon leaving the defendant's farm. *Id.* After denying the motion as premature, the court noted that at least some of the information sought "is discoverable and may be highly relevant to the defense of plaintiffs' claims." *Id.* at *5. The *Luna* plaintiffs, as Plaintiffs here, sought to recover expenses and costs associated with obtaining their visas and travelling to the United States. *Id.* The court stated that one of the reasons the information sought was relevant was because if the an H-2A employee later works for another employer while in the United States on the H-2A visa he acquired to work for defendants, "then at least some of the expenses he incurred in obtaining the visa and traveling to the United States did not inure to defendants' benefit and may not be recoverable…" *Id.* The *Luna* court added that under the permissive discovery standard, the information dealt with "legitimate areas of inquiry despite the danger that [the plaintiff's] answers might reveal damaging information concerning his immigration status." *Id.* at *6.

In another H-2A case involving both FLSA and breach of the H-2A contract claims, the court found the plaintiffs' immigration status may be relevant to their claims for wages

18

for hours not actually worked "[d]espite the availability of FLSA to both legal and illegal aliens," and despite their 3/4's guarantee contract claims. *Romero-Hernandez v. Alexander*, 2009 WL 1809484, *6-7 (N.D. Miss. June 24, 2009). As the *Luna* court noted, the *Romero-Hernandez* court also found that to the extent "a plaintiff worked for another employer or obtained other gains…or other benefit from their employment with defendants while on the H-2A visas, then at least a portion of the damages…on their breach of contract claims are not recoverable…" *Id.* at 7.

### 5.   Immigration Information Relevant to Mitigation of Damages

The immigration information sought here is also relevant to whether Plaintiffs appropriately mitigated their damages. *See e.g. Rodriguez v. ACL Farms, Inc.*, 2010 WL 4683743, *2-3 (E.D. Wash. Nov. 12, 2010) (distinguishing *Rivera v. Nibco, Inc.*, 364 F.3d 1057 (9th Cir.2004), relied upon by Plaintiffs, and holding immigration status relevant to actual damages and whether plaintiff reasonably mitigated those damages). Because the Plaintiffs seek wage losses, their legal status goes directly to the issue of what work is available to them and the efforts to mitigate their damages.

### 6.   Immigration Information Relevant to Certain Defenses Including Unclean Hands

The immigration information the Peroulis Defendants seek is also relevant to the Peroulis Defendants' equitable defense of unclean hands. In order to obtain their H-2A visas in the first instance, the Plaintiffs were interviewed by officials at the U.S. Consulate

in Lima, Peru, where they were asked whether they had made any payments to obtain the offer of employment. *Ex. B*. H-2A applicants are forbidden from paying to obtain a job. *Ex. B*; 8 C.F.R. § 214.2(h)(5)(xi)(A). The H-2A visa will be denied or revoked if it is discovered that the applicant/employee paid to obtain the employment. *Ex. B*; *Id.*  All of the Plaintiffs in this case allege that they or others on their behalf paid thousands of dollars to obtain their employment offers or family members made payment after they left the employment of the Defendants.. If Plaintiffs had honestly responded in their interviews that they had paid the money they now allege in their complaints, Plaintiffs would have been denied a visa.

Further, to the extent Plaintiffs attempted to transfer their H-2A visas upon absconding from the ranch, Plaintiffs would have had to deny again that they paid to obtain their employment.  Given Plaintiffs' allegations regarding substantial payments to obtain the employment, details related to Plaintiffs' immigration status is relevant to whether Plaintiffs obtained their initial visas or subsequent immigration documentation as result of participation in an illegal activity – namely, falsifying information provided to immigration officials. *See Hernandez-Cortez v. Hernandez*, 2003 WL 22519678, *5-6 (D. Kan. Nov. 4, 2003) (negligence imputed to plaintiffs because they were participating in an illegal activity by paying someone to transport them for work when they were in country illegally); *Maldonado v. Union Pac. R.R.*, 2012 WL 1232093, *2 (D. Kan. April 12, 2012)

(immigration status and whether plaintiff was engaged in illegal conduct at the time of the accident may be a factor when determining liability).

**B.    Immigration Information is Relevant to Plaintiffs' Credibility**

Plaintiffs ability to obtain a T or U visa may have been one of the reasons why Plaintiffs absconded from the ranch, and not because of any alleged mistreatment, which is directly relevant to Plaintiffs' credibility. Whether Plaintiffs obtained employment after leaving the ranch using false information also relates to their credibility. Although Plaintiffs cite cases that denied access to immigration information when sought to be used to attack credibility alone, there are several cases where courts have permitted discovery or allowed the information to be admitted at trial because it was relevant to credibility. *See e.g. Aguilar*, 2009 WL 1789336 at *3; *Samborski v. Linear Abatement Corp.*, 1997 WL 55949, *1 (S.D.N.Y. Feb. 11, 1997) (discoverable as relevant to credibility alone); *Bonilla v. Jaronczyk*, 354 Fed. Appx. 579, 583 (2nd Cir. 2009) (questions regarding party's alleged use of false papers to reenter U.S. admissible in § 1983 case under Fed.R.Evid. 608(b)(1) as conduct bearing on party's character for truthfulness or untruthfulness); *Gresham v. Petro Stopping Centers*, 2011 WL 1042705, *4 (D. Nev. March 18, 2011) (where good faith basis to believe the party gave false information to immigration officials, impeachment based solely on party's immigration status allowed using Fed.R.Evid. 608; and citing other Circuits that have held the same). As in *Aguilar*, the immigration information sought here "lies at the

heart of the parties' claims" and is relevant to Plaintiffs' credibility and bias. *Aguilar*, *supra*. at *3.

Here, there is evidence that information regarding the benefits of claiming alleged mistreatment was disseminated by CLS, as described above. Plaintiffs' counsel in this case provides information both on its website and directly to H-2A employees regarding the opportunity to obtain a T or U visa.

### D. Plaintiffs Fail to Show Any *In Terrorem* Effect

Plaintiffs repeatedly argue that discovery into the immigration information would have an impermissible *in terrorem* effect on both the Plaintiffs and other worker-plaintiffs. Brief at p. 10. Plaintiffs again rely on cases where the courts found that the immigration status was either irrelevant to or only collaterally related to the claims and defenses at issue, which have been distinguished above. Plaintiffs' faulty argument that such information may not be discovered because it is confidential has also been dispelled above.

Further, Plaintiffs fail to provide any explanation as to why the disclosure of such information within the context of this particular case will have a chilling effect on either the Plaintiffs or the public. It is particularly telling that Plaintiffs do not want to disclose information regarding their T or U visas, which in theory should contain information supporting their claims against the Peroulis Defendants.

Plaintiffs' final argument is that either the Peroulis Defendants or Defendant Crisologo Damian will use the immigration information to interfere with or undermine

Plaintiffs' immigration cases. Brief at p. 16, 18. Plaintiffs argue that a limited-use order would not be enough because Defendant Crisologo Damian "cannot be similarly controlled" by such an order since he has already allegedly harassed one of the Plaintiffs. Brief at p. 18. Irrespective of the improper and unfounded implication that the Defendants would not comply with an order of this Court, Defendant Crisologo Damian has thoroughly denied Plaintiffs' allegations of harassment in his deposition. Deposition of Crisologo Damian, 100:11-102:4; 163:5-15, attached hereto as **Exhibit K**.

To the extent that any *in terrorem* effect may exist here, a limited-use order may be entered to prohibit the parties from using or disclosing any information related to the immigration status outside the context of this lawsuit. Regardless, the relevance of the immigration information sought to the claims and defenses in this case far outweigh any *in terrorem* effect claimed by Plaintiffs. As such, this Court should permit the Peroulis Defendants' discovery.

## IV.   CONCLUSION

The immigration information sought is directly relevant to the parties' claims and defenses and Plaintiffs' credibility. Plaintiffs have failed to demonstrate the harm in producing this relevant information outweighs the presumption in favor of broad disclosure. Any *in terrorem* effect may be sufficiently addressed through a limited-use order preventing the parties from using or disclosing this information outside the context of this

lawsuit. Thus, the Peroulis Defendants respectfully request that this Court deny Plaintiffs'

Motion for Protective Order and permit discovery of the immigration information.

Respectfully submitted May 7, 2012,

s/ *Lindsey W. Jay*

Peter H. Doherty
Lindsey W. Jay
OVERTURF MCGATH HULL & DOHERTY, P.C.
625 East 16th Avenue
Denver, Colorado 80203
Phone: (303) 860-2848

Attorneys for Defendants –
John Peroulis & Sons Sheep, Inc., Louis
Peroulis, and Stanley Peroulis

24

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 7, 2012, I electronically filed the foregoing **PEROULIS DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c)** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jennifer J. Lee, Esq.
jlee@colegalserv.org

Jenifer C. Rodriguez, Esq.
jcrodriguez@colegalserv.org

Linda Surbaugh, Esq.
colinda2@aol.com

and mailed it, postage pre-paid to:

Crisologo Damian
2356 N. 2000 W.
Farr West, UT 84404

S/ *Tracey Zastrow*

Tracey Zastrow

25